By the Court.—Sedgwick, Ch. J.
—The referee found that the defendants, who are book-publishers, employed the plaintiff to canvass for certain serial publications, agreeing to pay him for his services the sum of $4 an order for the subscriptions taken by him. He further found that “ the expression $4 an order” had a well-settled meaning in the business in which the defendants were engaged and was understood at the time by both defendant and plaintiff to mean that the canvasser should be paid $4 for each bona fide subscription taken for the whole work after the subscriber had accepted and paid for ten parts or numbers thereof.
There was sufficient evidence to support the finding of the referee that-the expression did have the meaning, as he found and that it was understood by both parties. The appellant contends that the contract, as found by the referee, was so clear in its meaning and so definite, that resort could not competently be had to extrinsic facts to determine the meaning of the words, $4 an order, for the subscriptions taken by him.
In attempting to perceive, whether the phrase be clear and definite in meaning or ambiguous and indefinite, regard must be had to this consideration that the phrase was used to form a contract which had pecuniary gain for its object and to describe the means by which the gain wras to be reached. ' The benefit would come to the defendants, not *241 from the form or mere fact of subscription, but from its .anticipated consequence of fulfillment. The opportunity of benefit, would exist in the subscribers being likely to fulfill his subscription. Clearly the contract did not mean, to refer to subscriptions or orders that were su in form only, when from any cause, it was unlikely that the subscriber would take the book. After this is considered, there is uncertainty, as to the degree of likelihood of performance, that would be within the intention of the contract, and as to what characteristics of the subscription shall determine the kind of subscription intended. The words refer to several classes or kinds. In feuch case, section 288 of Green-leaf \s Evidence states the law, as follows: “ If the language ■of the instrument is applicable to several persons, to several parcels of land, to several species of goods, to several muniments or boundaries, to several writings, or the terms be vague and general,, or have diverse meanings, in household furniture, stock, freight, factory prices and the like, parol evidence is admissible of any extrinsic circumstances tending to show what person or persons or what things were intended by the party, or to ascertain his meaning in any other respect.”
There was, therefore, no error in the referee’s reverting to facts given in evidence for the purpose of showing what kind of order the parties meant to designate by the words used in the contract.
Against the objection of. plaintiff, the defendants were allowed to give in evidence certain accounts from their own books. Part of these accounts contained statements of subscriptions taken by other canvassers than plaintiff, and part contained statements of subscriptions obtained by plaintiff. There was no proof that the plaintiff had had any knowledge of the accounts of other canvassers, but I am of opinion they were admissible in proof of what was the meaning of the phrase that has been referred to. There was a probability that the circumstances being the same, the words would be used in the same sense in all the cases. As to the plaintiff’s account in defendants’ book, it was. *242 admissible for a like reason, and there was some evidence-that the plaintiff knew what the entires were and made a settlement with reference thereto.
The judgment should be affirmed with cost.
O’Gorman and Ingraham, JJ., concurred.